UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREGORY L. THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-3659 |
| | § | |
| RICK THALER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Gregory Thomas filed a complaint under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights.  Defendant Rick Thaler moved to dismiss the complaint.   The other defendants, in two separate motions, moved for summary judgment.   For the reasons stated below, defendants' motions are granted and plaintiff's complaint is dismissed with prejudice.

## I.    Background

At all times relevant to this case, Thomas was an inmate in the Wynne Unit of the Texas Department of Criminal Justice ("TDCJ").   Defendant Thaler was Director of the TDCJ Correctional Institutions Division.  Defendant Khoshdel was a Medical Doctor, and defendant Smock was a Nurse Practitioner, both employed by the University of Texas Medical Branch ("UTMB"), which provided medical services at the Wynne Unit under a contract with TDCJ (Khoshdel and Smock will be referred to collectively as the "UTMB Defendants").   Defendant Smock does not work on-site at Wynne, but provides care through Telemed when on-site medical staff is off duty.  *See* UTMB Defs. Motion for Summary Judgment at 18.   Defendant Pittman was Senior Warden, defendant O'Hare was an Assistant Warden, and the remaining

defendants were correctional officers of varying ranks at the Wynne Unit.   Plaintiff seeks injunctive, declaratory, and monetary relief.

Plaintiff alleges that he suffers from Type 2 diabetes, hypertension, and that he is insulin-dependent.   He contends that, after his transfer to the Wynne Unit, defendant Dr. Abbas Khoshdel, took him off his previously prescribed sliding scale dose of insulin and placed him on a fixed dosage.   Plaintiff alleges that the fixed dosage was too high and caused his blood sugar to drop to a dangerously low level.   He further contends that defendant Khoshdel failed to treat his hypertension, and that defendants Khoshdel and Smock failed to provide him medical care after an alleged use of force against plaintiff.

He further contends that defendants Trevino, Eckhart, Anthony, Akanji, and Mwangi used excessive force against him on May 7, 2012.   He further alleges that these defendants exhibited deliberate indifference to serious medical needs arising from injuries sustained during that use of force.   He contends that defendants O'Hare, Grimes, and Smith were deliberately indifferent to his serious medical needs by assigning him to a medically inappropriate work assignment.   He alleges that defendant Gambrell was deliberately indifferent to his health or safety because she allegedly found him unresponsive in his cell on April 20, 2012, but did not call a ranking officer.   He alleges that defendants Trevino, Eckhart, Anthony, Akanji, Mwangi, O'Hare, Shinette, and Gambrell retaliated against him in violation of his First Amendment rights.

On March 12, 2013, defendant Thaler filed a motion to dismiss.   On June 24, 2013, defendants Khoshdel and Smock filed a motion for summary judgment.   On the same date, the other defendants filed a motion for summary judgment.

II.    **Analysis**

    A.    **Standard of Review**

    1.    **Motion To Dismiss**

In reviewing a motion to dismiss under rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). The standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 601 (1969).

    2.    **Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Once the movant presents evidence demonstrating entitlement to summary judgment, the nonmovant must present specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

    B.    **Personal Involvement**

To prevail on his claims, Thomas must demonstrate that each defendant was personally involved in the alleged constitutional violations, or that the defendant committed wrongful acts

that were causally connected to a constitutional deprivation. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012).   Moreover, supervisory officials cannot be held vicariously liable under 42 U.S.C. § 1983 for acts of their subordinates on a theory of *respondeat superior*. *Monell v. Dept't of Soc. Servs.*, 436 U.S. 658, 692 (1978).   In his motion to dismiss, defendant Thaler argues that Thomas fails to plead that he of them was personally involved in any of the alleged constitutional violations.

A review of the complaint and more definite statement reveals that Thomas sues Thaler only in his supervisory capacity as then-Director of the TDCJ Correctional Institutions Division. Thomas appears to concede as much, stating that his claims against Thaler are based on "his subordinates illegal conduct" and that he "will not seek claims against this defendant." Complaint (Doc. # 1) at paragraph 43.   Because the only allegations against Thaler allege supervisory liability, Thaler is entitled to be dismissed from this case.

## C.   Eleventh Amendment Immunity

Thomas' complaint states that he is suing the defendants in their individual and official capacities.   The Eleventh Amendment, however, bars suit for damages against a state in federal court.   *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   A suit against a state official in his official capacity is a suit against the state.   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1990).   Therefore, any claim for money damages against the defendants in their official capacities is barred by the Eleventh Amendment.

## D.   Deliberate Indifference

Plaintiff alleges that numerous defendants were deliberately indifferent to his serious medical needs. To rise to the level of a constitutional violation, defendants' actions must exhibit deliberate indifference to the prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S.

4 / 13

825, 828 (1994).  "Deliberate indifference" is more than mere negligence, *Gamble*, 429 U.S. at

104-06, but "something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, deliberate indifference

requires that the defendant be subjectively aware of a substantial risk of serious harm to the

inmate and recklessly disregard that risk.  *Id.* at 829, 836.

> Deliberate indifference is an extremely high standard to meet . . .
> [T]he plaintiff must show that the officials "refused to treat him,
> ignored his complaints, intentionally treated him incorrectly, or
> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs."

*Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v.*

*Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

### 1.    The UTMB Defendants

Contrary to Thomas' assertion that he was not evaluated upon his arrival at the Wynne

unit, records show that Dr. Khoshdel saw Thomas two days after his arrival, and Thomas was

examined by a nurse on the same day.  UTMB Defs. Exh. A at 1, Exh. E at 2.  Dr. Khoshdel

reviewed Thomas' chart, finding that Thomas was on insulin for diabetes.  UTMB Defs. Exh. E

at 2.

On March 10, 2011, Dr. Khoshdel ordered morning and evening insulin lay-ins for 365

days.  UTMB Defs. Exh. A at 135-38, Exh. D at 2, Exh. E at 2.  At the same time, Dr. Khoshdel

took plaintiff off his sliding scale insulin dose, and prescribed fixed dosages of 40 in the morning

and 30 in the evening until plaintiff's glucose level was controlled.  *Id.*  He did so in an attempt

to regulate Thomas' glucose level. Thomas' blood glucose was monitored daily.  *Id.* at Exh. D at

2, E at 2.  A review of lab results showed that Thomas' blood glucose was extremely high,

indicating that the sliding scale was not effective. Exh. E at 2-3. Subsequent lab results showed that Thomas' glucose level was moderating. Exh. D at 3.

The record also contains evidence that Thomas was not compliant with the prescribed course of treatment. Exh. A at 160-206. At one point, he asked to be taken off insulin. Exh. B at 1-5. The record is rife with examples of Thomas refusing treatment. *See*, *e.g.*, Exh. A at 34-40, 55-60, 184, Exh. C at 13, Exh. D at 4-5.

The record also shows that Dr. Khoshdel did not change Thomas' prescription for hypertension. A Nurse Practitioner, who is not a party to this case, changed the prescription from Lopressor to Isosorbide after Thomas complained that the Lopressor was not working. UTMB Defs. Exh. D at 3. When Dr. Khoshdel saw Thomas approximately eight months later, he noted that Thomas was only 80 percent compliant in taking his medication. *See* UTMB Defs. Rxh. A at 144-46, Exh. D at 4.

Thomas also alleges that the UTMB defendants ignored a foot injury he allegedly sustained during a May 7, 2012 use of force incident. Records show that Thomas was seen by a non-party nurse on that date. UTMB Defs. Exh. A at 88-89. X-rays taken the following day were negative for any fracture or soft tissue damage. *Id.* at 90. The x-ray report noted a deformity in the foot that was likely from a previous trauma. *Id.*

On May 11, 2012, Dr. Khoshdel saw Thomas at sick call. UTMB Defs. Exh. A at 91-93, Exh. E at 5-6. Thomas requested pain medication for his foot, as well as other medications for other symptoms. Dr. Khoshdel ordered Ibuprofen twice a day for the foot pain. *Id.*, Exh. E.

Defendant Smock only saw Thomas once, by teleconference.  Thomas complained of foot pain on June 6, 2012.  Noting the previous x-ray, Smock encouraged Thomas to continue taking his ibuprofen.  UTMB Defs. Exh. A at 104-04, Exh. D at 8.

The record makes abundantly clear that Thomas received regular medical evaluations and treatment.  The record further indicates that the treatment was generally effective when Thomas was compliant.  Regardless of the effectiveness of the treatment, however, the record clearly shows that neither defendant Khoshdel nor defendant Smock exhibited deliberate indifference to Thomas' serious medical needs.  They are entitled to summary judgment.

## 2.      **Defendants Smith, Grimes, and O'Hare**

Thomas contends that defendants Smith, Grimes, and O'Hare were deliberately indifferent to his serious medical needs by assigning him work on the field force.  MDS at 11-13.  The record shows that, after his initial medical evaluation at Wynne, the only medical restriction placed on Thomas' work assignment was "Do Not Assign to Medical."  *Id.*, TDCJ Defs. Exh. D at 43.  When Thomas was assigned to the field force, on March 22, 2012, the assignment complied with the restrictions set by medical staff.

Thomas was seen again by the medical staff on May 4, 2012, and additional work restrictions were imposed.  TDCJ Defs. Exh. C at 3.  The following day, he was removed from the field squad.   TDCJ Defs. Exh. D at 46.  The record thus shows that Thomas' work assignments were in compliance with his medical restrictions, as determined by medical staff.  These defendants are corrections officials, not medical professionals.  Because they acted in compliance with Thomas' medical restrictions, Thomas cannot show that they were subjectively

aware of a substantial risk to Thomas' health and safety, and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Defendants Smith, Grimes, and O'Hare are therefore entitled to summary judgment on Thomas' deliberate indifference claim.

### 3.     **Defendant Shinette**

Thomas contends that defendant Shinette was deliberately indifferent to his medical needs by denying him access to insulin and writing him a disciplinary case for being out of place when he attempted to get insulin. MDS at 15. Plaintiff filed a grievance raising this issue, and it was determined that he was written up for being out of place because he refused to wait until he was called by the medical department to get his insulin. TDCJ Defs. Exh. D at 60, 66. The record also shows that he received his insulin on the date in question, March 3, 2012. TDCJ Defs. Exh. C at 59. It is thus clear that Shinette did not deprive Thomas of his insulin, and did not display deliberate indifference.

### 4.     **Defendant Gambrell**

Thomas alleges that defendant Gambrell found him unresponsive in his cell on April 20, 2012, and was deliberately indifferent by failing to contact a ranking supervisor. MDS at 14-15. Gambrell submits a copy of the Wynne Unit shift roster showing that she was assigned to the central control picket on that day. TDCJ Defs. Exh. G at 4, Exh. K. She therefore notes that she was not in the area of Thomas' cell and could not have found him unresponsive in his cell. TDCJ Defs. Exh. K. She is entitled to summary judgment on this claim.

**5.**  **Defendants Trevino, Eckhart, Akanji, Mwangi, and Anthony**

Thomas alleges that defendants Trevino, Eckhart, Akanji, Mwangi, and Anthony were deliberately indifferent to his serious medical needs arising from the use of force incident discussed above in connection with Thomas' excessive force claim.  The record shows, however, that Thomas received medical attention shortly after he was restrained.  *See* TDCJ Defs. Exh. A at 11.  The actions to restrain Thomas, as discussed below, were necessitated by Thomas' own actions.  The evidence thus establishes that these defendants brought Thomas for medical treatment as soon as was practicable.  They were not deliberately indifferent to his medical needs.

**E.**  **Excessive Force**

Thomas alleges that defendants Trevino, Akangi, Mwangi, Eckhart, and Anthony used excessive force against him in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  The record shows that, on May 7, 2012, Mwangi stopped Thomas in a hallway because Thomas' shirt was not tucked in, in violation of TDCJ policy.  TDCJ Defs. Exh. A at 11, Exh. J.  Plaintiff ignored Mwangi and kept walking.  After Thomas ignored a second order to tuck in his shirt, Mwangi asked Thomas for his TDCJ ID card.  Thomas refused to produce the card, and became hostile.  Defendants Eckhart and Trevino, and another officer then attempted to assist Mwangi.  Defendant Anthony arrived on the scene with a video camera.  *Id.*

Trevino ordered Thomas to surrender his ID card, but Trevino again refused.  Trevino then ordered Thomas to submit to being placed in hand restraints.  Plaintiff refused and ran toward defendant Anthony, running into her with sufficient force to cause the video camera to

shut off.  *Id.*, TDCJ Defs. Exhs. B, H, I, J, K.  Trevino and Eckhart then knocked Thomas to the ground and restrained him.

In determining whether prison officials used excessive force, the question is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks and citation omitted).

*Hudson* sets out five factors to consider in evaluating an excessive force claim:  1) The need for use of force; 2) whether the force used was proportionate to the need; 3) whether the defendants reasonably perceived a threat; 4) whether the defendants made an effort to temper the severity of the force used; and 5) the extent of the plaintiff's injuries.  The record shows that Thomas faced disciplinary charges stemming from his actions on May 7, 2012, and he was found guilty after a hearing.  This supports the defendants' argument that Thomas failed to comply with orders and assaulted one of the defendants.  TDCJ Defs. Exh. F at 1.

The record further shows that the defendants made several attempts to resolve the incident without using force, and used force only after Thomas assaulted Anthony.  *See* TDCJ Defs. Exh. A at 11, Exh. J.  Thomas did, in fact, assault Anthony.  Thus, the perceived threat was real.  Finally, plaintiff suffered only minor injuries from this incident, a swollen ankle and abrasions to the head, providing evidence that the force used was not disproportionate to the threat posed by Thomas, and "was applied in a good faith effort to maintain or restore discipline. . .."  Thus, the record shows that the force used was not excessive, and did not violate Thomas' constitutional rights.

### F.      Retaliation

Thomas alleges that the work assignment, disciplinary case for being out of place, use of force, and alleged denial of insulin and failure to call a supervisor, all detailed above, were all committed as retaliatory acts.  MDS at 8.

> To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.

*Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir.2008) (citation omitted).  Failure to identify the exercise of a specific constitutional right is fatal to a retaliation claim.  *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

As discussed above, the record demonstrates that all of the acts and omissions alleged by Thomas either did not happen, *e.g.*, Shinette allegedly discovering Thomas unresponsive in his cell, or were entirely proper.   Plaintiff therefore fails to demonstrate any unconstitutional retaliation.

### G.      Defendant Pitman

Plaintiff's complaint also names as a defendant Vernon K. Pitman, former Senior Warden of the Wynne Unit.  Plaintiff is proceeding *in forma pauperis*.  As a courtesy to the indigent plaintiff, the Court directed the United States Marshal Service to serve process on the defendants. All defendants except Pitman were served.  Pitman could not be located.

On January 30, 2014, this Court entered an order directing plaintiff to serve Pitman and file proof of service. That order advised plaintiff that failure to do so would result in dismissal of the claims against Pitman without prejudice. Plaintiff has not filed proof of service.

Rule 4(m) of the Federal Rules of Civil Procedure provides for dismissal on the court's own motion, after notice to the plaintiff, of any defendant who is not served within 120 days of the filing of the complaint. Plaintiff filed his complaint on December 14, 2012, far more than 120 days ago. This Court gave notice to plaintiff that Pitman would be dismissed unless plaintiff served him. Therefore, all claims against defendant Pitman are dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m).

## H.   Conclusion

For the foregoing reasons, defendant Thaler's motion to dismiss is granted, the UTMB defendants' motion for summary judgment is granted, the TDCJ defendants' motion for summary judgment is granted, and defendant Pitman is dismissed from this case without prejudice.

## III.   Order

It is ORDERED that:

1.      Defendant Thaler's motion to dismiss (Doc. # 26) is granted;

2.      All claims against defendant Pitman are dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure;

3.      The remaining defendants' motions for summary judgment (Docs. # 41 and

44) are GRANTED; and

4.      The   complaint   (Doc.   #  1)   is   DISMISSED   WITHOUT   PREJUDICE   as   to

defendant Pitman, and WITH PREJUDICE as to all other defendants.

SIGNED on this 18th day of March, 2014.

_____
Kenneth M. Hoyt
United States District Judge